LTL Attorneys LLP
Kevin M. Bringuel (Bar No. 196279)
  kevin.bringuel@ltlattorneys.com
Enoch H. Liang (Bar No. 212324)
  enoch.liang@ltlattorneys.com
Prashanth Chennakesavan (Bar No. 284022)
  prashanth.chennakesavan@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Phone: (213) 612-8900
Fax: (213) 612-3773

Attorneys for IMPRIMIS PHARMACEUTICALS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ALLERGAN USA, INC.,<br><br>            Plaintiff,<br><br>        v.<br><br>IMPRIMIS PHARMACEUTICALS, INC.,<br><br>            Defendant. | Case No. 8:17-cv-01551-DOC-JDE<br><br>**IMPRIMIS PHARMACEUTICALS, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |
| IMPRIMIS PHARMACEUTICALS, INC.,<br><br>            Counterclaim Plaintiff,<br><br>        v.<br><br>ALLERGAN USA, INC.,<br><br>            Counterclaim Defendant | |

No. 8:17-cv-01551-DOC-JDE

# AMENDED ANSWER

Defendant Imprimis Pharmaceuticals, Inc. ("Imprimis") by and through undersigned counsel, in response to the Complaint of Allergan USA, Inc.'s ("Allergan"), deny Allergan's allegations of violations of the Lanham Act and unfair competition and answer Allergan's Complaint as follows:

## I.     NATURE OF ACTION

1.     This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

2.     This paragraph contains legal conclusions for which no answer is required.

3.     This paragraph contains legal conclusions for which no answer is required.

4.     This paragraph contains legal conclusions for which no answer is required.

5.     Denied.

6.     Imprimis admits that the website www.imprimisrx.com displayed the phrase "high-quality compounded formulation" as of the date of the Complaint.  The remainder of this paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

7.     Denied.

8.     Denied.

9.     Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

10.     Imprimis admits that it dispenses compounded drugs, including those that

IMPRIMIS'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

are called "Dropless Therapy," "LessDrops" and "Simple Drops." Imprimis further admits that prescribers have sometimes used Imprimis compounds to treat patients during ocular surgery. Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

11. Denied.

12. Imprimis admits that it dispenses a compounded drug called "Klarity." Except as expressly admitted, Imprimis denies the remaining allegation in this paragraph.

13. Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

14. This paragraph contains a legal conclusion for which no answer is required. To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

15. This paragraph contains a legal conclusion for which no answer is required. To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

16. Imprimis admits that the document attached as Exhibit B to the Complaint includes the phrase "pioneering a new commercial pathway in the pharmaceutical industry." Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

17. This paragraph contains legal conclusions for which no answer is required. To the extent an answer is required, Imprimis denies the allegations in this paragraph.

18. This paragraph contains legal conclusions for which no answer is required. To the extent an answer is required, Imprimis lacks information sufficient to

IMPRIMIS'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

19.   Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

20.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis admits that the document attached as Exhibit C to the Complaint contains the phrases "the absence of a label warning about hypersensitivity reactions associated," "that is not suitable for human consumption or therapeutic use and may contain impurities," and "the IV administration of curcumin, despite the fact that the safety profile by this route of administration has not been established, nor has its effectiveness in treating eczema or thrombocytopenia."  Imprimis further admits that it issued a press release regarding its curcumin emulsion compound on August 7, 2017.  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph, including Allergan's characterization of Exhibit C and Imprimis's statement, given the FDA has confirmed the at-issue contamination was caused by third parties.

21.   Denied.

22.   Imprimis admits that on July 10, 2017, the Food and Drug Administration ("FDA") issued a "Form 483" to Imprimis.  The rest of this paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, except as expressly admitted, Imprimis denies the allegations.

23.   Imprimis admits that the FDA Warning Letter 17-PHI-10, dated August 3, 2017, and attached as Exhibit E to Allergan's Complaint contains the phrases "serious deficiencies," "which put patients at risk," and "comprehensive assessment." Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph, including Allergan's characterization of Exhibit E.

24.   Denied.

25.   Imprimis lacks information sufficient to form a belief about the truth of

the allegations contained in this paragraph, and on that basis denies them.

26.   Denied.

27.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations.

28.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis admits that the Investor Presentation attached as Exhibit A to the Complaint includes a slide that states "Ophthalmological Development Pipeline," states Imprimis may in the future dispense combination eye drops, and lists Restasis under "combination eye drops."  Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, including Allergan's characterization of Imprimis's document, and on that basis denies them.

29.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

30.   Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

## II.   PARTIES

31.   Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

32.   Admitted.

33.   Admitted.

34.   Admitted.

35.   Admitted.

36.   Imprimis admits that it dispenses prescribed compounds in this District, California, and other states in the United States.  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

### III.   JURISDICTION AND VENUE

37.   This paragraph contains legal conclusions for which no answer is required.

38.   This paragraph contains legal conclusions for which no answer is required.

39.   This paragraph contains legal conclusions for which no answer is required.

### IV.   FACTUAL ALLEGATIONS

40.   Imprimis admits that it dispenses compounded drugs and markets compounded drugs in all 50 states.  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

41.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

42.   This paragraph contains legal conclusions for which no answer is required.

43.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

44.   Denied.

45.   Imprimis admits that the partial quotations attributed to Mr. Baum, as reflected in Exhibit F to the Complaint, are accurate.  Except as expressly admitted, Imprimis denies the allegations contained in this paragraph, including Allergan's characterization of Mr. Baum's statements.

46.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis denies them.

47.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

48.   This paragraph contains legal conclusions for which no answer is required.  To the extent an answer is required, Imprimis admits that it applies for patent and trademark protection for some of its products, and employs sales professionals.  Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

49.   Imprimis admits that it "compound[s]" drugs.  The remaining allegations in this paragraph contain legal conclusions for which no answer is required.  To the extent an answer is required, except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

50.   Imprimis admits that its SEC Form 10-Q dated August 10, 2017, includes the phrase "all 50 states."  Imprimis further admits that its SEC Form 8-K dated August 10, 2017, includes the statements: "Imprimis customer network now stands at 1,700 ophthalmologists, surgery centers, and managed care organizations" and "been on the road recently in Ohio, Illinois, Michigan, Wisconsin and Nevada."  Imprimis further admits that on April 18, 2017, it issued a press release stating it signed a three-year exclusive sales representation agreement with "Precision Lens," which primarily focuses on 13 states in the U.S. Midwest.  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph, including Allergan's characterization of Imprimis's statements.

51.   Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

52.   a. Imprimis admits that "Dropless Therapy" refers to two different

compounds prescribed by physicians; that the "Tri-Moxi" compound combines triamcinolone acetonide and moxifloxacin hydrochloride; and that the "Tri-Moxi-Vanc" compound combines triamcinolone acetonide moxifloxacin hydrochloride, and vancomycin. Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them

b.  Imprimis admits that "LessDrops" refers to three different compounds prescribed by physicians; that the "Pred-Gati" compound combines prednisolone acetate and gatifloxacin; that the "Pred-Nepaf" compound combines prednisolone acetate and nepafenac; that the "Pred-Gati-Nepaf" compound combines prednisolone acetate, gatifloxacin, and nepafenac; and that as of the date of the Complaint, Imprimis's website stated LessDrops compounds "significantly reduce the number of eye drops needed after ocular surgery." Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

c.  Imprimis admits that "Simple Drops" refers to six compounds prescribed by physicians. Imprimis further admits that the compound "LAT" contains latanoprost; that the compound "TIM-LAT" contains timolol and latanoprost; that the compound "BRIM-DOR" contains brimonidine and dorzolamide; that the compound "TIM-BRIM-DOR" contains timolol, brimonidine, and dorzolamide; that the compound "TIM-DOR-LAT" contains timolol, dorzolamide, and latanoprost; and that the compound "TIM-BRIM-DOR-LAT" contains timolol, brimonidine, dorzolamide, and lataoprost. Imprimis further admits that as of the date of the Complaint, its website stated "Simple Drops conveniently provides multiple glaucoma medications into a single bottle. Provide your patients with a simple treatment option for their glaucoma." Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them

53. Denied.

54. Imprimis admits that on August 15, 2016, Mr. Baum stated:

> Adoption of our flagship ophthalmic formulations continues to grow as more physicians, patients and payers adopt Dropless Therapy and our LessDrops combination topical drops. We estimate this market represents 3.8 million cataract surgeries annually in the U.S. and our share of the cataract eye drop market is now over 10%.

Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph, including Allergan's characterization of Mr. Baum's statement.

55. Imprimis admits that on August 15, 2016, Mr. Baum's statement to investors included the phrase "capture market share from much larger pharmaceutical companies." Imprimis further admits that its press release titled *Imprimis Pharmaceuticals Patent-Pending Dropless and LessDrops Formulations Exceed One Million Patient Eyes Milestone*, dated July 27, 2017, contains the phrase "more than one million patient eyes." Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph, including Allergan's characterization of Imprimis's statements.

56. Imprimis admits that on August 5, 2017, Mr. Baum's statement to investors included the phrases "proprietary offerings" and "make a significant impact and take market share away from many of the larger or incumbent players." Imprimis lacks information sufficient to form a belief about the truth of the allegation that "Allergan is one of those larger and incumbent players" and on that basis denies it. Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph, including Allergan's characterization of Imprimis's statement.

57. Imprimis admits that its Investor Presentation (Complaint, Ex. A) includes a slide that references "Ophthalmology Development Pipeline," "Combination Eye Drops" and Restasis. Imprimis further admits on August 10, 2017, Mr. Baum's statement to investors included the phrase:

we entered into a licensing agreement for the exclusive worldwide rights to Klarity in innovative and patented ophthalmic topical solution and gel technology for patients with moderate to severe dry eye disease.

Except as expressly admitted, Imprimis denies the allegations in this paragraph, including Allergan's characterization of Imprimis's statements.

58. Denied.

59. This paragraph contains legal conclusions for which no answer is required. To the extent an answer is required, Imprimis denies the allegations in this paragraph.

60. Imprimis admits that the FDA issued a Form 483 on March 14, 2016 (Complaint, Ex. K); that the FDA issued an Amended FDA Form 483 on March 14, 2016 (Complaint, Ex. L); that the FDA issued a Referral Letter to California State Board of Pharmacy on June 23, 2015 (Complaint, Ex. M); and that the FDA issued a Form 483 on July 2, 2014 (Ex. N.) This rest of this paragraph contains legal conclusions for which no answer is required. To the extent an answer is required, except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the allegations, and on that basis denies them.

61. Imprimis admits that the FDA issued a Form 483 on March 31, 2017 (Complaint, Ex. O). Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

62. Imprimis admits that on March 20, 2017, the FDA issued Warning Letter WL#21-17 (Complaint, Ex. P.) Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

63. Imprimis admits that the FDA issued Form 483's on September 30, 2015; June 23, 2014; and August 19, 2013 (Complaint, Exs. Q, R, and S, respectively).

Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

64.     Imprimis admits that the FDA issued a Form 483 on August 1, 2016 (Complaint, Ex. U).  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

65.     Imprimis admits that the FDA issued a Form 483 on July 10, 2017 (Complaint, Ex. D).  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

66.     Imprimis admits that the FDA issued Warning Letter 17-PHI-10 on August 3, 2017 (Complaint, Ex. E).  Except as expressly admitted, Imprimis lacks information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

67.     Imprimis repeats and incorporates the admissions and denials of paragraph 20 above as if fully set forth herein.

68.     Denied.

69.     Denied.

70.     Imprimis admits that as of the date of the Complaint, its website included the phrase "under the regulatory framework of the Drug Quality & Security Act (2013) and state pharmacy laws."  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

71.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

72.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

73.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this

paragraph.

74.   This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

75.   Imprimis admits that as of the date of the Complaint, its website included the phrases "ORDER NOW Order" and "LessDrops from 503B outsourcing Facility today.  No patient information required."  Except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

76.   This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

77.   This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

78.   This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

79.   Imprimis admits that a video on its website as of September 6, 2017 included the statement "The patient is protected from infection and inflammation even more effectively than can be achieved with expensive, inconvenient, and irritating topical medications."  The remainder of this paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, except as expressly admitted, Imprimis denies the remaining allegations in this paragraph.

80.   Imprimis admits that as of the date of the Complaint, its website included the statement "95% of cataract surgeons surveyed would prefer Dropless Therapy."  Imprimis further admits that in 2014, it surveyed 21 cataract surgeons.  The remainder of this paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, except as expressly admitted, Imprimis denies the

remaining allegations in this paragraph.

81.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

82.     This paragraph contains a legal conclusion for which no answer is required.

83.     This paragraph contains a legal conclusion for which no answer is required.

84.     This paragraph contains a legal conclusion for which no answer is required.

85.     This paragraph contains a legal conclusion for which no answer is required.

86.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

87.     This paragraph contains a legal conclusion for which no answer is required.

88.     This paragraph contains a legal conclusion for which no answer is required.

89.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

90.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

91.     This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

92.    This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

93.    This paragraph contains a legal conclusion for which no answer is required.

94.    This paragraph contains a legal conclusion for which no answer is required.

95.    This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

96.    This paragraph contains a legal conclusion for which no answer is required.

97.    This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

98.    This paragraph contains a legal conclusion for which no answer is required.

99.    This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

100.    This paragraph contains a legal conclusion for which no answer is required.

101.    This paragraph contains a legal conclusion for which no answer is required.  To the extent an answer is required, Imprimis denies the allegations in this paragraph.

102.    This paragraph contains a legal conclusion for which no answer is required.

103.    This paragraph contains a legal conclusion for which no answer is

1    required.  To the extent an answer is required, Imprimis denies the allegations in this

2    paragraph.

3        104.   This paragraph contains a legal conclusion for which no answer is

4    required.

5        105.   This paragraph contains a legal conclusion for which no answer is

6    required.  To the extent an answer is required, Imprimis denies the allegations in this

7    paragraph.

8        106.   This paragraph contains a legal conclusion for which no answer is

9    required.  To the extent an answer is required, Imprimis denies the allegations in this

10   paragraph.

11       107.   This paragraph contains a legal conclusion for which no answer is

12   required.  To the extent an answer is required, Imprimis denies the allegations in this

13   paragraph.

### V.    CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**

Violation of the Lanham Act

(15 U.S.C. § 1051, *et seq.*)

18       108.   Imprimis repeats and incorporates the admissions and denials of

19   paragraphs 1 through 107 above as if fully set forth herein.

20       109.   Denied.

21       110.   Denied.

22       111.   Denied.

23       112.   Denied.

24       113.   Denied.

**SECOND CLAIM FOR RELIEF**

Violation of California's Unfair Competition Law (UCL)

(Cal. Bus. & Prof. Code § 17200, et seq.)

28       114.   Imprimis repeats and incorporates the admissions and denials of

1    paragraphs 1 through 113 above as if fully set forth herein.

2        115.   Denied.

3        116.   Denied.

4        117.   Denied.

5        118.   Denied.

6        119.   Denied.

7        120.   Denied.

8        121.   Denied.

9        122.   Denied.

10       123.   Denied.

11       124.   Denied.

### VI.    PRAYER FOR RELIEF

13       Imprimis denies that Allergan is entitled to the judgment sought, set forth in
14   paragraphs 1-8 on page 36 of its Complaint.

### DEFENSES AND AFFIRMATIVE DEFENSES

16           By alleging the defenses and affirmative set forth below, Imprimis does
17   not agree or concede any defense is an affirmative defense, or that it bears the burden
18   of proof or the burden of persuasion on any of these issues, whether in whole or in part.
19   Imprimis only assumes the burden of proof for those defenses that are affirmative
20   defenses as a matter of law and for which the law imposes the burden of proof on the
21   party asserting the defense.  As for its defenses to the Complaint, Imprimis alleges as
22   follows:

### FIRST DEFENSE

### (Failure to State a Claim)

25       1.      Allergan's Complaint, on one or more claims for relief set forth therein,
26   fails to state a claim upon which relief may be granted.

27

28

## SECOND DEFENSE

### (Waiver, Acquiescence, and Estoppel)

2.     Each of the purported claims set forth in Allergan's Complaint is barred by the doctrines of waiver, acquiescence, and estoppel.

## THIRD DEFENSE

### (Laches)

3.     Allergan's Complaint fails, in whole or in part, under the doctrine of laches.

## FOURTH DEFENSE

### (Failure to Mitigate)

4.     The claims made in the Complaint are barred, in whole or in part, because of Allergan's failure to mitigate damages, if such damages exist.

## FOURTH DEFENSE

### (Unclean Hands)

5.     The claims made in the Complaint are barred, in whole or in part, because under the doctrine of Unclean Hands.

## FIFTH DEFENSE

### (Acts of Plaintiff)

6.     On information and belief, damages, if any, that were allegedly sustained by Allergan as a result of the acts complaint of were caused, in whole or in part or were contributed to by reason of the acts, omissions, negligence, and/or intentional misconduct of Allergan, its agents, predecessors, and/or related entities.

## SIXTH DEFENSE

### (No Equitable Relief)

7.     Allergan is not entitled to equitable relief, including but not limited to Allergan's request for injunctive relief, because it has an adequate remedy at law.

**SEVENTH DEFENSE**

**(Actions of Others)**

8.     The claims made in the Complaint are barred, in whole or in part, because Imprimis is not liable for the acts of others over whom it has no control.

**EIGHTH DEFENSE**

**(No Causation)**

9.     Allergan's claims are barred, in whole or in part, because Allergan's damages, if any, were not caused by Imprimis.

**NINTH DEFENSE**

**(No Damages)**

10.     Without admitting the Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against Imprimis in the Complaint.  The relief prayed for in the Complaint therefore cannot be granted.

**TENTH DEFENSE**

**(No Irreparable Harm)**

11.     Allergan's claim for injunctive relief is barred because Allergan has not shown, and cannot show, it will suffer any irreparable harm from Imprimis's actions.

**ELEVENTH DEFENSE**

**(Adequate Remedy at Law)**

12.     The alleged injury or damage suffered by Allergan, if any, would be adequately compensated by damages.  Accordingly, Allergan has a complete and adequate remedy at law and is not entitled to any equitable relief.

**TWELFTH DEFENSE**

**(Duplicative Claims)**

13.     Without admitting that the Complaint states a claim, any remedies are limited to the extent that Allergan seeks an overlapping or duplicative recovery pursuant to the various claims against Imprimis or others for any alleged single wrong.

## THIRTEENTH DEFENSE

### (Lack of Standing)

14.   Allergan lacks standing to assert the claims alleged in the Complaint against Imprimis.

## FOURTEENTH DEFENSE

### (Preemption and Preclusion)

15.   The claims in the Complaint are preempted or precluded as a matter of federal and California law.

## FIFTEENTH DEFENSE

### (First Amendment)

16.   The claims in the Complaint are barred, in whole or in part, by the First Amendment to the United States Constitution.

## SIXTEENTH DEFENSE

### (Offset)

17.   If Allergan is entitled to any recovery in this action, Imprimis is entitled to an offset of any and all amounts due and owing to Imprimis, including attorneys' fees, if any.

## ADDITIONAL DEFENSES

18.   Imprimis reserves the right to assert additional defenses based on information learned of or obtained during discovery.

//
//
//
//
//
//
//

## COUNTERCLAIMS

1.     Defendant and Counterclaim Plaintiff Imprimis Pharmaceuticals, Inc. ("Imprimis") brings this action against Plaintiff and Counterclaim Defendant Allergan USA, Inc. ("Allergan") and alleges the following:

### NATURE OF THE ACTION

2.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and California's Unfair Competition Law, Business and Professions Code § 17200, *et. seq.*  Allergan falsely and misleadingly advertises that its ophthalmic drugs, including Restasis® and Restasis MultiDose®, are FDA-compliant and that only a fraction of patients suffer adverse reactions.  Neither is the case.

3.     Formed through a series of corporate transactions—including the 2015 acquisition of Allergan, Inc. by Actavis, Plc—Allergan, Plc, the corporate parent of Allergan USA, Inc., is a Dublin, Ireland-based global behemoth with over $15 billion in annual revenue.  The entities that now use the Allergan name bear no resemblance to the former Allergan, Inc., the once-small Irvine, California company that pioneered anti-allergy nose drops and ophthalmic drugs.  Instead of focusing on research, development, and innovation, the new Allergan has been using its financial heft to buy developed commercial drug assets.  In particular, Allergan focuses on expensive, cash-pay aesthetic treatments, such as those that freeze away abdominal fat, and promotes old, off-patent, and often efficaciously inferior drugs at extremely high prices.

4.     In the face of questions about the effectiveness of its ophthalmic products, Allergan has responded by trying to eliminate competition and, specifically, any threat to its billion-dollar Restasis® franchise through any means possible.  To that end, in the past few years, Allergan and its corporate family members have:

- Transferred and immediately licensed back its Restasis patents to the Saint Regis Mohawk Tribe in an effort to avoid *inter partes* review of its patents pursuant to the America Invents Act (*see* **Exhibit 1**); and

- Used bundled discounts, exclusive dealing arrangements, coercion and

19

interference in violation of antitrust laws to prevent physicians from prescribing competing products (*see* **Exhibit 2**).

5.     Most alarmingly, however, Allergan has blatantly violated Federal and State laws, and used false and misleading advertising and drug labeling to dupe physicians into prescribing Restasis® and other ophthalmic drugs even though independent scientific studies suggest that patients suffer severe adverse effects far more frequently than currently disclosed by Allergan.  In many cases, the unexpected adverse effects lead to discontinuation of the use of prescribed Allergan ophthalmic drugs like Restasis®.  On information and belief, having already paid for Allergan prescriptions, these patients often do not seek alternative drugs to treat their ailments.

## PARTIES

6.     Counterclaim Plaintiff Imprimis Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business in San Diego, California.

7.     On information and belief, Allergan USA, Inc. is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  On information and belief, Allergan has a significant business presence in California, including in this District.

## JURISDICTIONAL STATEMENT

8.     This Court has subject matter jurisdiction under 15 U.S.C. § 21(a) and 28 U.S.C. §§ 1331 and 1367.

9.     This Court has personal jurisdiction over Allergan because Allergan has submitted itself to the Court's jurisdiction by filing its action against Imprimis.  In addition, Allergan does substantial business in California, and Imprimis's counterclaims arise out of or relate to Allergan's contacts with California.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c).

## FACTUAL BACKGROUND

**Federal and California Laws Require Allergan to Adequately Test and Label its Products and Follow Good Manufacturing Practices**

11.     The Food, Drug, and Cosmetic Act ("FDCA") and attendant Food and Drug Administration ("FDA") regulations include a comprehensive set of requirements manufacturers must meet before selling FDA-approved drugs.

12.     In order to sell a drug in the United States under the guise of FDA approval, the manufacturing drug company must first test the drug. The drug company alone, not the FDA, is responsible for testing. The company first performs laboratory and animal tests to discover how the drug works and whether it is likely to be safe and work well in humans. The company then conducts human tests. The next step of the process is for the company to send testing data, along with proposed labeling, to the FDA's Center for Drug Evaluation and Research ("CDER").

13.     The CDER evaluates the drug company's data and proposed labeling and, if the review establishes that a drug's health benefits outweigh its known risks, approves the drug for sale. The FDA "shall issue an order refusing to approve" a new drug application if testing is inadequate or the results show the drug is unsafe. 21 U.S.C. § 355(d). Because the FDA relies on the manufacturer's data, it is critical that the manufacturer's tests are scientifically sound and that it provide the FDA with accurate data, including data about the percentage of test subjects that suffer adverse effects from the drug.

14.     A company's obligation to report data to the FDA does not cease once a drug is approved. The FDA requires manufacturers to "promptly review all adverse drug experience information obtained or otherwise received [] from any source" and periodically report such adverse drug experiences to the FDA. 21 CFR § 314.80. If the FDA learns that a drug is unsafe or was inadequately tested before marketing, it is required to withdraw approval of the drug. 21 U.S.C. § 355(e).

15.     When an approved drug is marketed to physicians and patients, the FDCA also requires that drug labels not be false or misleading, and manufacturers to disclose "side effects, contraindications, and effectiveness." 21 U.S.C. § 352.

16.     In addition, the FDCA requires "conformity with current good

manufacturing practice" ("cGMP") to assure drugs meet requirements "as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess." 21 U.S.C. § 351(a).

17.     California's Sherman Law incorporates the FDCA's requirement that approved drug manufacturers comply with drug testing, labeling, and manufacturing provisions in the FDCA.  Cal. Health & Safety Code § 110105.

18.     Approved drugs manufacturers' adherence to the FDCA and FDA regulations is especially important.  While physicians carefully evaluate whether a custom compounded drug is suitable for individual patients, FDA-approved drugs are standardized and prescribed *en masse*.  On information and belief, physicians and patients rely on FDA approval and labels as *prima facie* evidence of safety, effectiveness, and compliance with the FDCA and FDA regulations

**Allergan Blatantly Violates cGMP, Testing, and Labeling Laws and Regulations**

19.     Although it advertises its ophthalmic drug products as "FDA-approved," suggesting they are products of reliable testing and manufactured in accordance with cGMP requirements, Allergan consistently ignores the requirements.

20.     As the FDA has found, Allergan fails to comply with the requirement that drug sponsors conduct scientifically valid pre-marketing testing.  As just one example, in March 2013, the FDA issued an inspection report concluding that Allergan's "laboratory studies were [not] conducted in accordance with [testing] protocol."  FDA Form 483 (March 21, 2013) (**Exhibit 3**).

21.     Nor does Allergan inform the FDA, physicians or patients of adverse effects it learns of once a drug is released, as required by law.  *In fact, between 2010 and 2013, Allergan failed to report no fewer than 107 "Serious and Unexpected Adverse Events."*  (*See* **Exhibit 4** (emphasis added).)  On information and belief, since 2013, Allergan has continued it practice of failing to report Serious and Unexpected Adverse Events to the FDA, physicians, or patients.

22.     Allergan's failure to perform adequate pre-marketing testing, failure to inform the FDA of newly discovered adverse effects, and failure to update label place patients at risk.  Physicians prescribe Allergan products assuming, based on Allergan's testing and labeling, that only a small percentage of patients will suffer adverse effects.  However, in reality, Allergan systematically under-reports the percentage of users who suffer adverse effects.

23.     Allergan's Restasis® disclosure is a prime example.  Allergan's product label informs physicians and patients that the most common adverse reaction from the use of Restasis® is ocular burning, but that only 17% of patients experience a burning sensation.  (*See* **Exhibit 5**.)  That claim is false and misleading.  On information and belief, it is widely known in the ophthalmic community that far more than 17% of users experience burning or stinging when using Restasis®.  As one example, a November 2012 study found that *60% of participants experienced "burning/stinging"* after using Restasis®.  (*See* **Exhibit 6**.)  The adverse effect is the primary reason patients discontinue using Restasis®.

24.     Allergan has not updated and modified its labels to inform physicians and patients that a much larger number of users suffer severe adverse effects—burning/stinging—when using Restasis®.  Allergan's decision to withhold information is willful.  Allergan is aware of the results of the 2012 study; indeed, one of its own employees is a co-author.  (*See* **Exhibit 6**.)

25.     On information and belief, Allergan is aware of additional studies that suggest its ophthalmic product labels under-report adverse effects.

26.     Allergan also has a history of failing to comply with cGMP laws and regulations, further placing patients at risk.  Recent FDA enforcement highlights Allergan's repeated violations.  As examples:

- <u>August 2013</u>—The FDA released a report following an 11-day inspection of Allergan's Waco, Texas facility citing six potential cGMP violations.  One of those violations increased the likelihood of contamination of

empty bottles of Lumigan®, a drug used to treat glaucoma, before the bottles were filled.  Potentially contaminated empty bottles "[were] not rejected"; Allergan filled the bottles with Lumigan® and shipped them to patients.  The FDA also found that five lots of Lumigan® were shipped with contaminants.  Other violations included a mechanic frequently placing his hand and arm over bottles of Refresh Tears® and personnel handling products without necessary protective apparel, increasing the likelihood of contamination.  FDA Form 483 (Aug. 2, 2013) (**Exhibit 7**).

- September 2013—The FDA released a report following a 26-day inspection of Allergan's Campbell, California facility that noted, among numerous other violations, that Allergan's quality control unit failed to "adequately investigate and document" violations of cGMPs.  FDA Form 483 (Sept. 6, 2013) (**Exhibit 8**).

- July 2015—The FDA released a detailed report following a two-week inspection of Allergan's Waco, Texas facility identifying systematic sterility issues with Allergan's ophthalmic products.  Specifically, the FDA noted there were 38 complaints, including 15 Adverse Drug Events in the preceding year because Lacrilube®, a supposedly sterile ophthalmic ointment, increasingly had "particles [that] fell into [] users' eyes."  In addition, Allergan "failed to thoroughly investigate complaints related to mold in [] ophthalmic products" and failed to follow procedures "designed to prevent microbiological contamination of drug products purporting to be sterile."  FDA Form 483 (July 10, 2015) (**Exhibit 9**).

- October 2015—A few months later, the FDA released yet another report regarding violations in Allergan's Waco, Texas facility.  This time, the FDA found that Allergan failed to adequately test samples of several ophthalmic drugs for "strength, quality and purity."  FDA Form 483 (October 8, 2015) (**Exhibit 10**).

27.     Allergan's false and misleading advertising causes physicians to prescribe Allergan products instead of custom compounds that reduce or eliminate Restasis®'s adverse effects, including such compounds dispensed by Imprimis.  For example, while Restasis® causes stinging and burning in a significant population of patients, a different formulation—.1% cyclosporine ophthalmic emulsion instead of .05%—can be substantially more medically appropriate and can be made to reduce ocular burning and stinging.  (*See* **Exhibit 11**.)  Imprimis compounds such a formula based on prescriptions by physicians for individual patients who have specific needs.  On information and belief, if physicians and patients knew of the true nature and extent of Restasis®'s adverse effects, they would choose more appropriate and comfortable custom formulations, including those produced by Imprimis.

28.     On information and belief, custom compounds may be prescribed in lieu of Allergan's ophthalmic drugs, including Allergan drugs Zymaxid®, Pred Forte®, Pred Mild®, Pred-G®, Acular®, Acuvail®, Lumigan®, Alphagan P®, Comigan®, and Restasis®.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Violation of the Lanham Act

(15 U.S.C. § 1051, *et seq.*)

29.     Imprimis re-alleges and incorporates by reference each and every allegation set forth above as if fully stated herein.

30.     Allergan's practices, as described above, constitute unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a).

31.     Allergan has violated the Lanham Act by using "false or misleading descriptions of fact" and "false or misleading representations of fact" in its commercial advertising or promotion that "misrepresent[] the nature, characteristics, [or] qualities" of its products, as set forth above.

32.     Allergan has violated the Lanham Act by making false and misleading

statements by implying Allergan's products comply with the FDCA and FDA regulations, and by under-reporting—or failing to report—adverse effects of its ophthalmic drug products.

33.    Imprimis has suffered injury in fact and actual damages resulting from Allergan's false and misleading advertising and promotion and unfair competitive practice.

34.    Imprimis seeks disgorgement of Allergan's profits and injunctive relief requiring Allergan to cease its false and misleading advertising and promotion and unfair competitive practices.

## SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law (UCL)

### (Cal. Bus. & Prof. Code § 17200, *et. seq.*)

35.    Imprimis re-alleges and incorporates by reference each and every allegation set forth above as if fully stated herein.

36.    Allergan's practices, as described above, constitute unlawful, unfair, and/or fraudulent business practices in violation of the UCL.

37.    Allergan has violated the UCL by unlawfully marketing, selling, and distributing its products in violation of the California Sherman Law, including its false advertising provisions.

38.    Allergan's practices as alleged above, constitute unfair business practices in violation of the UCL because they are substantially injurious to consumers and any utility of such practices is outweighed by the harm to consumers. Allergan's practices have caused, and continue to cause, substantial injuries to Imprimis and the public.

39.    Imprimis seeks declaratory and injunctive relief requiring Allergan to cease its unlawful, unfair, and fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Imprimis respectfully requests that this Court enter judgment in its favor:

1.    A preliminary and permanent injunction, enjoining Allergan from continuing the unlawful and unfair business practices alleged in this Complaint;

2.    A judgment that Allergan violated the Lanham Act, 15 U.S.C. § 1051, *et seq.*;

3.    A judgment that Allergan violated California Business and Professions Code § 17200, *et. seq.*;

4.    Damages and other monetary relief according to proof;

5.    Declaratory relief;

6.    Attorneys' fees and costs incurred in this action;

7.    Pre- and post-judgment interest; and

8.    Any further relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Imprimis hereby demands a jury trial on all issues raised by Allergan's Complaint or Imprimis's Counterclaims so triable.

Date: December 20, 2017        LTL ATTORNEYS LLP

By: /s/ Kevin M. Bringuel
       Kevin M. Bringuel
       Enoch H. Liang
       Prashanth Chennakesavan
       Attorneys for IMPRIMIS
       PHARMACEUTICALS, INC.