1    JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
     *jakro@kslaw.com*
2    AARON S. CRAIG (Bar No. 204741)
     *acraig@kslaw.com*
3    KING & SPALDING LLP
     633 West Fifth Street, Suite 1700
4    Los Angeles, CA 90071
     Telephone:  (213) 443-4355
5    Facsimile:   (213) 443-4310

6    JEFFREY S. BUCHOLTZ (*pro hac vice*)
     *jbucholtz@kslaw.com*
7    MARISA C. MALECK (*pro hac vice*)
     *mmaleck@kslaw.com*
8    KING & SPALDING LLP
     1700 Pennsylvania Avenue NW
9    Washington, DC 20006
     Telephone:  (202) 737-0500
10   Facsimile:   (202) 626-3737

11   Attorneys for Plaintiff
     ALLERGAN USA, INC.
12

13             **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15                 **SOUTHERN DIVISION**

16

| | |
|---|---|
| 17   ALLERGAN USA, INC., | Case No. 8:17-cv-01551-DOC-JDE |
| 18         Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ISSUE ESTABLISHMENT AND MONETARY SANCTIONS** |
| 19          v. | |
| 20   IMPRIMIS PHARMACEUTICALS, INC., | |
| 21 | Date:        August 27, 2018 |
| 22         Defendant. | Time:        8:30 a.m. |
| 23 | Courtroom:  9D |
| 24 | Judge:      Hon. David O. Carter |

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .................................. 1

        A.      Defendant is Unambiguously Ordered To Produce Documents. ..................... 2

        B.      Defendant Fails to Comply with the May 7 Order. ......................................... 2

        C.      Defendant Admits It Has Not Complied With the May 7 Order. .................... 8

III.    LEGAL ARGUMENT ............................................................................. 11

IV.     CONCLUSION ......................................................................................... 17

NOTICE OF MOTION AND MOTION FOR SANCTIONS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Campbell v. Nationwide Mut. Ins. Co.*,
  No. SACV1400091JLSDFMX, 2015 WL 12699509 (C.D. Cal. Nov. 24,
  2015) ............................................................................................................16

*Chevron U.S.A., Inc. v. M & M Petroleum Servs., Inc.*,
  No. SACV 07-0818DOCANX, 2009 WL 2431926 (C.D. Cal. Aug. 6, 2009).......................16

*Mack-Univ. LLC v. Halstead*,
  No. SACV 07-393DOC (ANX), 2007 WL 4458823 (C.D. Cal. Sept. 25, 2007)...................16

*Meggitt (Orange Cty.), Inc. v. Nie Yongzhong*,
  No. SACV 13-0239-DOC, 2015 WL 1809354 (C.D. Cal. Apr. 21, 2015)................11, 14, 15

*Tatung Co., Ltd. v. Hsu*,
  No. SACV131743DOCANX, 2016 WL 1047343 (C.D. Cal. Mar. 16, 2016)  ..........11, 14, 15

*Thinking Liberally Media v. Orange Juice Blog*,
  No. SACV 10-0139 DOC, 2011 WL 1812767 (C.D. Cal. May 12, 2011).......................15, 16

*Vinh Nguyen v. Radient Pharm.*,
  No. SACV110406DOCMLGX, 2013 WL 12149241 (C.D. Cal. July 19, 2013) ...................15

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983) ...............................................................................11

**Statutes**

Food, Drug & Cosmetic Act, Sections 503A and 503B ........................................13, 14

**Other Authorities**

Federal Rule of Civil Procedure 37 .............................................................3, 4, 11, 16

C.D. Cal. Local Rule 37-1 ......................................................................................6

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 27, 2018, at 8:30 a.m., or as soon thereafter as it may be heard, Plaintiff Allergan USA, Inc. ("Allergan") will, and hereby does, move this Court for an order of discovery and monetary sanctions, pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority, in response to Defendant's failure to comply with the Court's order compelling production of certain documents.  The motion will be, and hereby is, made on the following grounds:

1.     On May 7, 2018, Magistrate Judge John D. Early ordered Defendant Imprimis Pharmaceuticals Inc. ("Defendant") to produce all responsive, non-privileged documents and communications in response to Allergan's Requests for Production ("RFPs") Nos. 5–8, 10–17, 21–28, and 45.  ("May 7 Order," Dkt. No. 59 and Akro Decl. Exh. B.)[1]  Those requests sought production of documents that are essential to prove Allergan's claims, including (i) Defendant's communications with Health Care Providers relating to Dropless Therapy, LessDrops, Simple Drops and Klarity (RFP Nos. 5–8); (ii) documents related to those communications (RFP Nos. 5–8); (iii) documents in which Defendant states or represents that any of its products come from a Section 503B facility (RFP No. 45); and (iv) documents in which Defendant has stated or represented the lawfulness of its business practices and sales (RFP Nos. 10–11), its compliance with the governing legal framework (RFP No. 21), the superiority of its drugs compared to the FDA-approved drugs with which they compete (RFP Nos. 12–17), the efficacy of its drugs (RFP Nos. 22–25), and the supposed preference for its drugs by cataract surgeons (RFP Nos. 26–28).  Magistrate Judge Early ordered Defendant to provide these responsive, non-privileged documents by May 31, 2018.  (Dkt. No. 59 and Akro Decl. Exh B ¶ 7.)

_____

[1] Magistrate Judge Early also sanctioned Defendant $10,000 for failing to comply with its discovery obligations.  (Dkt. No. 59 and Akro Decl. Exh B ¶ 8.)

2.     Defendant has not complied with the May 7 Order in that Defendant has failed to produce all responsive, non-privileged documents and communications.  Instead, Defendant has improperly excluded key document custodians entirely, admitting that it has not produced documents from the custodial files of its sales personnel or its sales and business development executives.  Defendant has also improperly excluded sources of documents by limiting its production almost entirely to email and attachments, excluding other sources such as desktop and share drive repositories and paper documents.  And Defendant has unilaterally imposed unjustified temporal limitations on its search and/or production.  At a minimum, the Court should hold an evidentiary hearing to determine what Defendant has (and has not) done to comply with the order compelling production.

3.     Despite the Court's May 7 Order compelling production and awarding monetary sanctions, Defendant continues to refuse to participate in the discovery process in good faith.  Defendant's conduct warrants discovery sanctions and additional monetary sanctions pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority.  As explained in greater detail in the accompanying memorandum, Defendant's failure to comply with the May 7 Order has substantially prejudiced Allergan's ability to prove its claims.  This prejudice is acute because the close of fact discovery is quickly approaching.

4.     Allergan requests that the Court impose "issue" sanctions establishing the false, misleading, and materially deceptive nature of Defendant's advertisements and promotion to Health Care Providers.  In the alternative, Allergan requests that the Court preclude Defendant from offering evidence on these issues.  At the very least, Allergan requests that the Court instruct the jury that Defendant failed to produce documents it was ordered to produce and that the jury is to presume these documents would have demonstrated that Defendant's advertisements and promotion to Health Care Providers are false, misleading, and

materially deceptive.  Allergan also requests monetary sanctions for the work required to prepare this motion.

5.   Before bringing this motion, Allergan's counsel detailed the deficiencies in Defendant's production in writing on numerous occasions and conferred with Defendant's counsel on multiple fruitless occasions, including on July 11 and 20.  Defendant's counsel stated on July 11 that they were not in a position to respond to the deficiencies in Defendant's production in light of a contemplated association of new counsel.  Defendant's original counsel then reiterated in writing that they would not address Defendant's failure to comply with the Court's May 7 Order compelling production.  On July 20, 2018, Defendant's new counsel filed a notice of appearance.  A further conference of counsel was held that same day with Defendant's new and original counsel. Defendant's new counsel said he would look into certain deficiencies regarding the categories of documents Defendant has failed to produce despite the May 7 Order compelling production.  Defendant's new counsel made no commitment to produce additional documents, and provided no specific date by which any additional documents would be produced.  Then, on July 27, 2018, Defendant's new counsel emailed Allergan's counsel stating that Defendant has collected documents from three sales executives, which Defendant "will produce shortly," and that it was "reconsidering [its] prior exclusion of Regional Business Directors" and was "looking into feasibility of producing documents from the RBDs," without any promises or guarantees as to when Defendant would produce any additional documents.

Allergan's motion for discovery and monetary sanctions is based on this Notice, the Memorandum of Points and Authorities filed herewith in support of this motion, the Declaration of Joseph N. Akrotirianakis ("Akro. Decl.") filed concurrently herewith and the documents and materials appended thereto, the

pleadings and records on file in this case, and such other pleadings and oral argument as may be presented to the Court at any hearing on this motion.

This motion is made following the Local Rule 37-1 conference of counsel, which took place by telephone on July 11 and July 20, 2018, as well as by written email and letter correspondence on the following dates:  July 3, 6, 11, 12, 13, 14, 20, and 27.

DATED: July 30, 2018                          KING & SPALDING LLP


By: __/s/ *Joseph N. Akrotirianakis*___
    JOSEPH N. AKROTIRIANAKIS
    AARON S. CRAIG

Attorneys for Plaintiff
ALLERGAN USA, INC.

NOTICE OF MOTION AND MOTION FOR SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant has continuously failed to comply with its discovery obligations despite a court order compelling production of documents and sanctioning Defendant $10,000 for failing to participate in the discovery process in good faith. On May 7, 2018, Defendant was ordered to produce by May 31 all responsive, non-privileged documents in response to a number of Allergan's RFPs (the "May 7 Order" (attached as Exhibit B to the concurrently filed Declaration of Joseph N. Akrotirianakis ("Akro Decl."))).   Two months after this deadline, ***Defendant admits it has not produced documents unambiguously ordered produced***.   In spite of the Court's May 7 Order, Defendant has unilaterally and improperly opted to (1) exclude the documents of certain key custodians (its sales force personnel, titled "Regional Business Directors," and several of its sales executives); (2) exclude document sources; and (3) impose unjustifiable time-frame limitations on its search and/or production.

Defendant's failure to comply with the unambiguous May 7 Order is hampering Allergan's ability to prove its claims.   The discovery cutoff is approaching, and Allergan has not received discovery needed to identify witnesses to depose, let alone the discovery it needs—and to which it is entitled—to move for summary judgment, seek a preliminary injunction, or prove its case at trial. The monetary sanctions previously imposed have proved insufficient to coerce Defendant to comply with discovery obligations.   The Court should now impose additional discovery (issue and/or preclusion) sanctions and monetary sanctions.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Allergan served its first set of RFPs to Defendant on December 22, 2017—over seven months ago.   Defendant's failure to produce even a single responsive document, coupled with its broad objections to Allergan's Requests, necessitated Allergan's motion to compel discovery and for sanctions.  (Dkt. No. 47.)  In the May 7 Order, Magistrate Judge Early granted Allergan's motion to compel almost

1

in its entirety.   (Dkt. No. 53 (motion to compel); Dkt. No. 59 (order granting motion to compel); Akro. Decl. ¶¶ 11–13.)

### A.    Defendant is Unambiguously Ordered To Produce Documents.

In the May 7 Order, Magistrate Judge Early rejected most of Defendant's objections and ordered Defendant to pay monetary sanctions and to produce all non-privileged documents responsive to Allergan's RFPs Nos. 5–8, 10–17, 21–28, and 45.  (Dkt. No. 59 and Akro Decl. Exh. B.)  Those RFPs sought: (i) Defendant's communications with Health Care Providers ("HCPs") relating to Dropless Therapy, LessDrops, Simple Drops and Klarity (RFP Nos. 5–8); (ii) documents related to those communications (RFP Nos. 5–8); (iii) documents in which Defendant states or represents that any of its products come from a Section 503B facility (RFP No. 45); and (iv) documents in which Defendant has stated or represented the lawfulness of its business practices and sales (RFP Nos. 10–11), its compliance with the governing legal framework (RFP No. 21), the superiority of its drugs compared to the FDA-approved drugs with which they compete (RFP Nos. 12–17), the efficacy of its drugs (RFP Nos. 22–25), and the supposed preference for its drugs by cataract surgeons (RFP Nos. 26–28).  The Court ordered defendant to product responsive documents by May 31, 2018.  (Dkt. No. 59 and Akro Decl. Exh. B ¶ 7.)

### B.    Defendant Fails to Comply with the May 7 Order.

On June 4, 2018, Defendant produced 78,552 files and documents.  (Akro. Decl. ¶15.) But it is undisputed those documents do not include all responsive, non-privileged documents Magistrate Judge Early ordered Defendant to produce. Defendant has failed to comply with the May 7 Order in at least three important respects.   Defendant has: (1) not produced (or, according to counsel, even attempted to collect) documents from many key custodians, including Defendant's sales representatives; (2) largely limited its production to email and email attachments only—and failed to produce other types of responsive documents; and

(3) improperly limited its production of emails to those sent on or after January 2, 2015.

*First*, Defendant violated the Court's order compelling production of documents related to its sales by excluding from its search and collection its sales force and those individuals who manage or direct sales operations.

Allergan propounded RFPs seeking any communication Defendant has had with any HCP relating to Defendant's ophthalmic products or product lines at issue in this litigation.  (*See* Allergan's First Set of RFPs, Nos. 5–8.)  Before the May 7 Order, Defendant sought to limit its production in several ways, but Magistrate Judge Early ordered Defendant to produce "all responsive, non-privileged Communications related to marketing ***and sales***."  (Dkt. No. 59 and Akro Decl. Exh. B ¶ 4(a) (emphasis added).)

In spite of this clear order, the metadata accompanying Defendant's production in response to the May 7 Order shows that Defendant excluded its Regional Business Directors—who function as Defendant's sales representatives—and other key sales personnel as custodians.  (Akro. Decl. ¶ 18(b).)  Instead, Defendant's production is limited to only eleven custodians—two Marketing Associates, two Marketing Managers, the Chief Financial Officer, two Customer Care personnel (a Supervisor and a Director), three Vice Presidents (one of Product Strategy, one of  Commercialization, and one of Quality), and the Chief Executive Officer.  (Akro. Decl. ¶ 18(a), Exh. E.)  In other words, Defendant's response to an order to produce all responsive documents "related to marketing and sales" was to exclude all of its sales representatives and at least several sales executives.

Through several letters and during telephonic conferences, Defendant's counsel asserted that they did not need to produce documents from Regional Business Directors because those employees did not have very much communication with HCPs and did not have any role in formulating and disseminating relevant sales materials.  (Akro. Decl. ¶26(a), 28(a), Exh. K at 1.)

These excuses are incredible on their face: HCPs are the purchasers of the Defendant's products, and the Regional Business Directors are Defendant's field force responsible for sales, so how could they not engage in advertising or promotion-related communications with HCPs?  And based on even the limited production Allergan has received, it is apparent that these excuses are false, as emails produced by Defendant reference in-person visits and other communications between Regional Business Directors and HCPs.  (Akro. Decl. ¶ 31, Exh. M–P.)  Even if it were true that the Regional Business Directors had no role in *formulating* sales or marketing materials, even Defendant's limited production belies Defendant's assertion that they had no role in *disseminating* such materials.  (Akro. Decl. ¶ 31, Exh. M, N.)  This is a case about false or misleading advertising and promotion by Defendant.  Documents in which Defendant's sales representatives made representations in advertising or promotion to HCPs are at the core of the case.  Defendant's effort to withhold these documents, in spite of the May 7 Order, tells the Court everything it needs to know about Defendant's attitude toward its discovery obligations and court orders.

*Second*, it is clear that Defendant has excluded entire sources of documents and limited its court-ordered production to emails and their attachments.  Allergan propounded RFPs seeking all documents in which Defendant made certain statements or representations regarding its products or product lines, and all documents relating to such statements or representations, including documents in which Defendant stated or represented: (1) Defendant's products are lawfully compounded (Allergan's First Set of RFPs, Nos. 10–11); (2) Defendant's products are superior to FDA-approved products with which they compete (*id*., Nos. 12–13); (3) Defendant's products reduce issues with patient compliance or reduce the number of eye drops needed after ocular surgery (*id*., Nos. 14–17); and (4) Dropless Therapy is any way safer or more effective than topical medications (*id*., Nos. 22–25.)  Before the May 7 Order, Defendant sought to limit its production to

"representations in marketing"—*i.e.*, external communications—while withholding internal communications of its sales and marketing representatives and executives relating to such external communications.  (Dkt. No. 53, at 23, 31, 37, 42, 59, 65.) Defendant produced some documents prior to the May 3, 2018 hearing on Allergan's motion to compel.  (Akro. Decl. ¶ 7.)  Because of the narrowness of Defendant's interpretations of the RFPs and the breadth of Defendant's objections, Defendant produced only 310 files and documents in total before the May 7 Order. (*Id.*)  Following Defendant's limited, April 27 production, Magistrate Judge Early rejected Defendant's proposed limitations and ordered it to produce "all responsive, nonprivileged documents" and "all responsive, nonprivileged Communications" excluding routine orders.  (Dkt. No. 59 and Akro Decl. Exh. B ¶ 4(b)-(c), (e).)

Rather than comply with the May 7 Order and produce responsive documents from all available sources, Defendant improperly limited its post-May 7 Order production almost entirely to emails and their attachments.  Defendant produced just **two** standalone (i.e., not emailed) files in its second production.  The metadata reveals that these two documents were created on May 25, 2018 and are associated with the search of a single custodian's email archive (Jose Lopez). These two documents (one .xls file and one .csv file), moreover, are virtually unreadable, as they were produced only as .pdf images rather than in the native format required by the parties' agreed-upon ESI protocol.  (Akro. Decl. ¶19(a).)

Allergan's RFPs and Magistrate Judge Early's May 7 Order were in no way limited to email and email attachments.  To the contrary, the RFPs sought responsive documents in various types of repositories and in all forms, and the Order compelled Defendant to produce all responsive documents, including those from non-email repositories (e.g., desktops, share drive folders, paper files, etc.). (*See* Allergan's First Set of RFPs, Definitions at 3 (defining "document" broadly); Dkt. 53 ¶ 4 (ordering production of certain documents without narrowing the

meaning of that word.))  Defendant was not free to choose to limit its production only to its email and documents its employees sent by email.

Recently, Defendant has taken the position that the 310 documents it produced before the May 7 Order constitute the entire universe of responsive documents not emailed.  (Akro. Decl. ¶26(c), Exh. K at 1.)  Again, that excuse is at best implausible given that Defendant's first production was limited to ***external*** marketing materials and excluded all internal documents relating to marketing.[2] When Magistrate Judge Early rejected that limitation, Defendant was required to search for and produce all responsive internal documents.  The notion that Defendant could have precisely ***zero*** responsive internal documents other than email and email attachments—not a single hard copy of a draft marketing document with handwritten notes on it, not a single memo discussing how to phrase a marketing document on a desktop computer—is absurd.

Moreover, Defendant has now informed Allergan that Defendant had ***not*** searched all relevant sources to pull the 310 documents.  At the time of the first production, Defendant's counsel said that many of the documents were kept in non-digital format, meaning that they were obtained without resort to searching employees' desktop computers or any shared drive or network folder.  (Akro. Decl. ¶9, Exh. A.)  Moreover, the custodian for all 310 documents and files was listed as "Imprimis," rather than any particular employee, meaning that the 310 documents did ***not*** come from any particular employee's files.  (*Id.*)

For these reasons, it is clear that, notwithstanding the May 7 Order,

---

[2]  Consistent with Defendant's objections, the email documents Defendant produced on June 4, 2018, show that Defendant did, in fact, limit its initial April 27, 2018 production to <u>external</u> marketing materials.  Indeed, Defendants' June 4 production contains emails in which Defendant specifically instructed its employees to limit their searches to public marketing materials.  (Akro. Decl. ¶ 32(a); Akro Decl. Exh. Q.)

Defendant did not search for documents maintained on desktops or in personal share drive folders, shared network folders, or hard copy files.  Defendant has therefore failed to comply with the May 7 Order, and that failure is contumacious.  If the Court believes it necessary to decide this motion, the Court should order an evidentiary hearing to determine what Defendant did to comply with the May 7 Order.

**Third**, Defendant limited its second production to emails (and attached documents) sent on or after January 2, 2015.  (Akro. Decl. ¶ 19.)  Allergan's RFPs did not limit the timeframe for responsive documents, and neither did the May 7 Order.  Defendant's date restriction is particularly concerning given that Allergan's Complaint contains several allegations related to statements, conduct, or events that occurred before January 2, 2015.  (*See, e.g.*, Dkt. No. 1, Complaint ¶¶ 49, 60(d), 63, 80.)

Defendant's counsel has expressed an "understanding [that] Imprimis's email archives [only] date back to early 2015 because that is when Imprimis switched from internally hosting email to using Office365."  (Akro. Decl. ¶ 26(b), Exh. K.)  Defendant's counsel further stated that Defendant's "IT department is working to ensure emails that pre-date the switch to Office365 were not preserved [sic]."  (*Id.*).

This excuse is also implausible.  For one, it is highly unlikely that Defendant switched the email system without preserving any historical email.  For another, even if certain pre-2015 emails are genuinely unavailable, that does not excuse Defendant from searching for pre-2015 documents in **non-email** repositories.  Finally, Defendant has produced documents showing that it instructed its employees to not even search for pre-2015 documents (and, in at least one case, to search only documents from 2016 or later).  (Akro. Decl. ¶ 32, Exh. Q, R, S.)  If necessary to decide this motion, Allergan respectfully requests that the Court order an evidentiary hearing to determine whether it has searched for pre-2015 documents, why it instructed its employees to limit the temporal scope of their

searches for responsive documents, and whether pre-2015 emails are available.

### C.   Defendant Admits It Has Not Complied With the May 7 Order.

To no avail, Allergan's counsel has reached out to Defendant's counsel through numerous letters and emails to notify them of these violations and to explore a solution.  On <u>July 3</u>, Allergan's counsel sent Defendant's counsel a letter raising the improperly limited custodian/Regional Business Director issue and requesting a conference of counsel.  (Akro. Decl. ¶ 18, Exh. E.)   On <u>July 6</u>, Allergan's counsel sent Defendant's counsel another letter pointing out that Defendant had produced only email (and attachments) sent on or after January 2, 2015 and again requesting a conference of counsel.  (Akro. Decl. ¶ 19, Exh. F.)

Allergan's counsel and Defendant's counsel conferred, by telephone, on <u>July 11</u> concerning these deficiencies in Defendant's production.  (Akro. Decl. ¶ 21.)  Defendant's counsel offered no information on whether, how, or when Defendant intended to correct these deficiencies.  (*Id*.)  Rather, Defendant's counsel informed Allergan's counsel that Defendant's new counsel should review the issues and respond.

Having received no assurance that Defendant would comply with the Court's May 7 Order, Allergan's counsel sent another letter to Defendant's counsel on <u>July 12</u>.  The letter pointed out that six weeks had passed since the May 31 production deadline and Defendant had still not complied with the May 7 Order.  (Akro. Decl. ¶ 22, Exh. H.)  In the July 12 letter, Allergan also informed Defendant that, while it remained open to discussing a resolution, it would seek discovery sanctions and other available remedies from the Court.  (*Id.*)

On <u>July 13</u>, Defendant's counsel responded, confirming that they did not plan to address Defendant's failure to comply with the May 7 Order and that Defendant's new counsel would need to review the issues.  (Akro. Decl. ¶ 23, Exh. I.)  Allergan's counsel responded the following day, <u>July 14</u>, noting that no request for substitution of counsel had been made or granted.  (Akro. Decl. ¶24, Exh. J.)

A week passed before Defendant's original counsel, on <u>July 20</u>, sent Allergan's counsel an email that purported to address these issues.  (Akro. Decl. ¶ 26, Exh. K.)  That same day, Defendant's new counsel filed a notice of appearance.  (Dkt. No. 65.)  At 1:00 p.m. on <u>July 20</u>, a telephone conference was held between Allergan's counsel and Defendant's counsel (new and original), in which Allergan sought clarification of several points in Defendant's email.  (Akro. Decl. ¶ 27.)  In the email and subsequent call, Defendant's counsel recognized the issues with their production, but refused to explain when they would remedy them:

<u>Regional Business Directors</u>.  In the July 20 email, Defendant's counsel acknowledged that they had excluded relevant custodians from their previous search, stating that they would now "retrieve and produc[e] documents from additional custodians involved in Imprimis's sales force." (Akro. Decl. ¶¶ 26(a), 28(a), Exh. K at 1.)  Defendant's counsel clarified that Defendant would produce responsive "emails" (not all documents) from Defendant's Vice President for Sales for Ophthalmology, National Sales Director for Ophthalmology, and Vice President of Business Development.   (Akro. Decl. ¶ 26(a), Exh. K at 1.)  Defendant's counsel added that it would not produce documents from Regional Business Directors on the basis that  "Regional Business Directors did not have any role in formulating and disseminating relevant sales materials." (*Id.*)

In a July 20, 2018 telephone conference following the email, Defendant's counsel offered a second, separate rationale for Defendant's refusal to produce documents from its sales force: that Regional Business Directors "did not have very much communication with health care providers."  (Akro. Decl. ¶ 28(a).)  That rationale is transparently false for the reasons explained above.  Defendant does not deny that the Regional Business Directors make sales pitches to HCPs, which is demonstrably so based on the email traffic Allergan has seen in Defendant's limited production.  (Akro. Decl. ¶ 31, Exh. M-P.)  On July 27, 2018, Defendant provided a minor update with respect to producing documents from

Regional Business Directors and sales executives, as discussed below.

Stand-alone/Non-email Documents.   Defendant's counsel insist that the original production of "over 300 documents" constitutes the entire universe of responsive documents, including from employees' computers and the shared drive. (Akro. Decl. ¶ 26(c), Exh. K at 1.)  In other words, Defendant's counsel have taken the position that no other non-email documents exist beyond the small number in Defendant's first production and that the May 7 Order had no effect whatever on Defendant's obligation to produce non-email documents.  This position is equally implausible, and Defendant's counsel made no attempt to explain, either in the email or the subsequent July 20, 2018 telephone conference, how Magistrate Judge Early's rejection of Defendant's narrowing constructions and overruling of Defendant's objections could have had no effect at all on Defendant's production obligations.

Time Frame.  Defendant's counsel has claimed that Imprimis does not have access to its pre-2015 emails because it switched from internally hosting email to using Office365.  (Akro. Decl. ¶¶ 26(b), Exh. K at 1.)  Allergan explained why that is highly unlikely to be true, and on July 20, 2018,  Defendant's counsel hedged, stating that, if they located "accessible sources of pre-2015 emails, Imprimis will produce those."  (*Id.*)  But Defendant's counsel provided no time frame in which Defendant's IT department would determine whether pre-2015 emails had been preserved.   (*Id.*)   Defendant's counsel also failed to address Defendant's obligations to collect and produce non-email documents created before January 2, 2015—documents that would not have been affected by Defendant's switching its email provider. (*Id.*)

One week later, on July 27, 2018, Defendant's new counsel wrote with an update: that Defendant has collected documents from three sales/business development executives, which it would produce "shortly," and that it was "reconsidering its prior exclusion of Regional Business Directors" and was

10

"looking into feasibility of producing documents from the RBDs." (Akro Decl. Exh. L). These vague promises came with no guarantees or even estimates of whether or when these productions would take place, and did not obviate the need to file this motion.

## III. LEGAL ARGUMENT

### A. Legal Standard

Courts have discretion to impose a "wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Among other things, Federal Rule of Civil Procedure 37 authorizes a court to impose "just orders" that may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action . . . ; [] prohibit[] the disobedient party from supporting or opposing designated claims . . . or from introducing designated matters in evidence . . . or [] treat[] as contempt of court the failure to obey any court order . . . ." Fed. R. Civ. P. 37(b)(2)(A). "Alternately, or in addition, the court may impose on the disobedient party reasonable expenses caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Meggitt (Orange Cty.), Inc. v. Nie Yongzhong*, No. SACV 13-0239-DOC, 2015 WL 1809354, at *10 (C.D. Cal. Apr. 21, 2015) (Carter, J.). And "[c]ourts have inherent power to enforce their orders through civil contempt." *Tatung Co., Ltd. v. Hsu*, No. SACV131743DOCANX, 2016 WL 1047343, at *4 (C.D. Cal. Mar. 16, 2016) (Carter, J.) (internal quotation marks omitted).

### B. Defendant Indisputably Has Failed To Produce Documents That The Court Ordered It To Produce.

As described more fully above, Defendants has failed to comply with the May 7 Order in three important ways. First, Defendant has improperly excluded the documents of certain key custodians (sales representatives) from its production.

Second, Defendant has improperly excluded stand-alone (non-email) documents from its production.  Third, Defendant has improperly limited its production to documents from 2015 (and in at least one case, 2016) and onward.  Defendant's excuses for the admitted failure to produce these documents range from highly implausible to transparently false.  Far from justifying Defendant's limitations on its production, Defendant's excuses underscore that Defendant has failed to engage in discovery in good faith throughout the pendency of this action.

### C. Defendant's Failure To Comply With The Court's Order Has Prejudiced Allergan.

Defendant's failure to comply with the May 7 Order has prejudiced Allergan's ability to prove its case.  This case is about false and misleading advertising and unfair competition in which Defendant has engaged and is engaging.  Allergan develops and manufactures ophthalmic drugs, which it sells only after establishing through clinical trials that they are safe and effective and only after obtaining FDA's approval.  (*See* Dkt. No. 31, Mot. to Dismiss Order at 1–2.)  Defendant, by contrast, mass-markets its competing so-called "compounded" drugs nationwide, without FDA approval, and with an aim to capture a significant market share.  (*See id.* at 2.)

Defendant misleads consumers and HCPs in a variety of ways.  Defendant falsely claims to comply with Sections 503A and 503B of the Food, Drug & Cosmetic Act ("FDCA"), which provide exemptions from the FDA-approval requirement for compounded drugs under carefully limited circumstances. (Dkt. No. 1, Compl., ¶¶ 1, 70.)  Defendant promotes its Dropless Therapy drug with a false and misleading superiority claim, stating in a video (which is among the items Defendant has failed to produce) that "[t]he patient is protected from infection and inflammation even more effectively than can be achieved with expensive, inconvenient, and irritating topical medications."  (*Id.*, ¶ 79).  Defendant also falsely claims that "95% of cataract surgeons would prefer

12

Dropless Therapy." (*Id.*, ¶ 80.)[3]

A central issue in this case is how Defendant has misrepresented to HCPs that it complies with Sections 503A and 503B of the FDCA. Defendant markets its drugs through one-on-one selling, using its Regional Business Directors as sales representatives. The Regional Business Directors are in direct and frequent contact with the HCPs who are Defendant's customers. Defendant's own documents show that Regional Business Directors have in-person meetings with HCPs to try to sell Defendant's drugs. (Akro. Decl. Exh. P at IMPRIMIS00000122320 (Regional Business Director scheduling in-person visit to eye care clinic).) And Magistrate Judge Early ordered Defendant to produce all documents "relating to marketing and sales." (Dkt. 59 at 1–2.) Excluding the Regional Business Directors from Defendant's search and production is impossible to explain other than as contempt. Allergan is also prejudiced by Defendant's limitation of its production in response to the May 7 Order to emails and attachments, excluding all other types of documents and repositories, as well as by Defendant's unilateral time-frame limitations that ignore the full, relevant time period of Allergan's allegations.

Despite previous monetary sanctions, Defendant has refused to comply with the May 7 Order. This suggests Defendant's conduct is both willful and calculated to delay these proceedings. That Defendant's excuses fail the straight-face test confirms this. With each passing day, Allergan is increasingly prejudiced by Defendant's ongoing failure to produce responsive documents. The discovery cutoff is quickly approaching in November, but Allergan cannot prepare for and take meaningful depositions before the cutoff because Defendant has failed to produce ordered discovery. That is undoubtedly just as Defendant hopes—if refusing to comply with the May 7 Order will prevent Allergan from filing a

---

[3] In its Answer, Defendant denies that its statements are false and misleading. (See Dkt. No. 34, Imprimis's First Amended Answer and Counterclaims ¶¶ 70, 75, 79, 80.)

motion for a preliminary injunction or for summary judgment, Defendant may continue to milk its unlawful business model.

### D.    Defendant's Violations of the May 7 Order Warrant the Requested Sanctions.

In accord with many of this Court's orders awarding discovery and monetary sanctions, this Court should enter a similar order sanctioning Defendant for its refusal to obey the May 7 Order.

1.   In several cases, this Court has not hesitated to issue broad sanctions where—as here—a party has refused to comply with discovery orders.  Consider, for example, this Court's opinion in *Meggitt (Orange Cty.), Inc. v. Nie Yongzhong*, No. SACV 13-0239-DOC, 2015 WL 1809354 (C.D. Cal. Apr. 21, 2015).  As in this case, the defendants there failed to turn over documents in violation of a court order compelling production.  *Id*. at *11.  The Court determined that the conduct was "sanctionable," ordered monetary sanctions, and explained that it would also impose discovery sanctions in the form of "evidentiary preclusion or an adverse inference instruction regarding the late disclosed documents . . . in the course of ruling on *motions in limine* and developing the jury instructions."  *Id*. at *12–13.

The Court reached a similar result in *Tatung*, a case in which it ordered discovery sanctions in light of abuses akin to the ones in this case.  In that case, a special master determined that one of the parties had "engaged in a campaign of willful obfuscation and ha[d] failed in its obligations to answer discovery in a forthright manner" and recommended discovery sanctions.  2016 WL 1047343, at *3.  This Court agreed, reasoning that the party's "conduct in discovery, including its failure to comply with discovery obligations and the Special Master's orders . . . well supported" the recommendation to preclude that party from rebutting evidence regarding certain fraudulent conduct.  *Id*. at *4.

*Tatung* and *Meggitt* do not stand alone.  Indeed, this Court has on a number of other occasions imposed sanctions precluding a defendant from offering

14

evidence where, as here, the defendant flouts discovery rules and orders. *See, e.g.*, *Vinh Nguyen v. Radient Pharm.*, No. SACV110406DOCMLGX, 2013 WL 12149241, at *1 (C.D. Cal. July 19, 2013) (Carter, J.) (entering sanctions precluding certain expert testimony where defendant failed to provide an expert report); *Chevron U.S.A., Inc. v. M & M Petroleum Servs., Inc.*, No. SACV 07-0818DOCANX, 2009 WL 2431926, at *22 (C.D. Cal. Aug. 6, 2009) (Carter, J.) (finding "evidence preclusion sanctions [to be] just and appropriate sanctions for . . . egregious behavior that significantly delayed the litigation and caused undue burden and expense to the Court and to [the opposing party]"); *Mack-Univ. LLC v. Halstead*, No. SACV 07-393DOC (ANX), 2007 WL 4458823, at *3 (C.D. Cal. Sept. 25, 2007) (Carter, J.) (entering sanctions striking an answer based on defendant's "refusal to cooperate in discovery and flagrant disregard" of a discovery order).

The Court has also issued monetary sanctions for violations of discovery orders. For example, in *Thinking Liberally Media v. Orange Juice Blog*, No. SACV 10-0139 DOC, 2011 WL 1812767 (C.D. Cal. May 12, 2011) (Carter, J.), the defendant failed to comply with an order requiring him to produce certain documents and refused to cooperate meaningfully during the parties' meet and confer. *Id*. at *1. The Court awarded monetary sanctions and ordered further production of documents. *Id*. at *3. As in this case, the defendant's conduct "ha[d] certainly been harmful to Plaintiffs' ability to prepare for trial." *Id*. at *2. And, as in this case, the defendant had "been warned in the past, through the imposition of sanctions, about his obligation to comply with discovery requests." *Id*.

**2.** The Court should order similar relief in this case. As in the aforementioned cases, Defendant has failed to comply with the May 7 Order. Moreover, Defendant's violations of that Order have "certainly been harmful" to Allergan's "ability to prepare for trial." *Orange Juice Blog*, 2011 WL 1812767 at

*2.   Because of Defendant's violations, Allergan has not received all of the evidence it is entitled to obtain to demonstrate that Defendant's advertisements and communications with HCPs are false, misleading, and materially deceptive. Accordingly, the Court should enter an order establishing that Allergan has proven these issues and/or precluding Defendant from introducing evidence on these issues.   In the alternative, Allergan requests that the Court instruct the jury that Defendant failed to produce documents that it was ordered to produce and that, as a result, the jury must presume that these documents would have supported these elements of Allergan's claims.

This type of order is necessary to remedy the prejudice to Allergan, and it is fully warranted by the egregious nature of Defendant's violations.   Monetary sanctions alone have proved to be insufficient, as the Court's prior monetary sanctions did nothing to deter Defendant from failing to comply with the May 7 Order.

That said, the Court should *also* enter an order for monetary sanctions against Defendant for Allergan's attorney's fees incurred in bringing this motion. Under Rule 37(b)(2)(C), a court that has imposed sanctions pursuant to Rule 37(b)(2)(A) is to order the sanctioned party to pay the reasonable expenses incurred by the other party due to the noncompliance with a discovery order "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Campbell v. Nationwide Mut. Ins. Co.*, No. SACV1400091JLSDFMX, 2015 WL 12699509, at *4 (C.D. Cal. Nov. 24, 2015) (alterations and quotation marks omitted).   Here, Defendant has failed to show that its non-compliance was substantially justified or that an award of sanctions would be unjust.   Quite the contrary, tolerating Defendant's disregard of the Court's Order and its discovery obligations would be unjust.

//

//

NOTICE OF MOTION AND MOTION FOR SANCTIONS

**IV.    CONCLUSION**

For the foregoing reasons, Allergan respectfully requests that the Court grant its motion and issue an order for discovery and monetary sanctions against Defendant.

DATED: July 30, 2018                              KING & SPALDING LLP


                                                  By: _/s/ Joseph N. Akrotirianakis_
                                                      JOSEPH N. AKROTIRIANAKIS
                                                      AARON S. CRAIG

                                                  Attorneys for Plaintiff
                                                  ALLERGAN USA, INC.

17
NOTICE OF MOTION AND MOTION FOR SANCTIONS