PAYNE & FEARS LLP
Attorneys at Law
Daniel L. Rasmussen (State Bar No. 120276)
dlr@paynefears.com
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile:  (949) 851-1212

BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
Imprimis Pharmaceuticals, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ALLERGAN USA, INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>IMPRIMIS PHARMACEUTICALS,<br>INC.,<br><br>          Defendant. | Case No. 8:17-cv-01551-DOC-JDE<br>The Honorable David O. Carter<br><br>**DEFENDANT IMPRIMIS<br>PHARMACEUTICALS, INC.'S<br>REPLY IN SUPPORT OF<br>RENEWED MOTION FOR<br>JUDGMENT AS A MATTER OF<br>LAW**<br><br>Date:    July 29, 2019<br>Time:   8:30 a.m.<br>Crtrm.: 9D<br><br>Final Pretrial Conference:<br>   May 8, 2019, 8:30 a.m.<br>Trial Date:  May 9, 2019, 8:30 a.m. |

# **TABLE OF CONTENTS**

**Page**

1.    A Legally Cognizable Damages Theory Does Not Require Expert Testimony, but Allergan's Damages Theory is Not Legally Cognizable, With or Without Expert Testimony. ....................................................1

2.    *ThermoLife* Is Not "Squarely On Point" and Does Not Allow Damages to be Awarded Based on Presumptions. ...................................................1

3.    The Court's Summary Judgment Ruling Did Not Establish Allergan's Entitlement to Some Amount of Damages. ...........................................3

4.    Allergan's Evidence of Sales Trends Is Inadequate Proof Connecting Losses to False Advertisements or Quantifying Allergan's Alleged Losses. ...........................................................................................4

    A.    The sales trend argument fails as a matter of evidence and logic. ...........4

    B.    The sales trend argument is based on a distorted quotation of relevant legal principles. ...........................................................6

5.    Allergan's Evidence that Customers Purportedly Purchased from Imprimis After Being Exposed to the False Advertisements Is Inadequate as a Matter of Law to Sustain the Damage Award. ..............................................8

6.    Allergan Failed to Show How the Evidence Provides a Reasonable Basis for Computing the Amount of Lost Sales Due to False Advertising. ................11

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## <u>FEDERAL CASES</u>

4
*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,

5
    627 F. Supp. 2d 384 (D.N.J. 2009)............................................................9

6
*DSPT Int'l v. Nahum*,
    624 F.3d 1213 (9th Cir. 2010) ...............................................................13

7

8
*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ................................................................2, 3

9

10
*Lindy Pen Co. v. Bic Pen Corp.*,
    1989 WL 296762 (C.D. Cal. 1989) ........................................................5

11

12
*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exchange, Inc.*,
    732 Fed Appx. 532 (9th Cir. Apr. 30, 2018) ..............................3, 8, 9, 10

13

14
*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exchange, Inc.*,
    Ninth Circuit Case No. 13-55239, Dkt. No. 82......................................10

15
*Seven-Up Co. v. Coca-Cola Co.*,
    86 F.3d 1379 (5th Cir. 1996) ..............................................................8, 9

16

17
*Societe Civile Succession Richard Guiono v. Bedeser Inc.*,
    2007 WL 3238703 (D. Ariz. Oct. 31, 2007) ...........................................2

18

19
*Stop Staring! Designs v. Tatyana*,
    2012 WL 12883613 (C.D. Cal. Sept. 13, 2012), *aff'd* 625 Fed.Appx. 328

20
    (9th Cir. Aug. 31, 2015) ........................................................................7

21
*ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*,
    648 F. App'x 609 (9th Cir. 2016)....................................................1, 2, 3

22

23
*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ...............................................................2, 3

24

25
*Victoria Cruises, Inc. v. Changjiang Overseas Travel Co.*,
    630 F. Supp. 2d 255 (S.D.N.Y. 2008) .....................................................5

26

27

28

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

## FEDERAL STATUTES

Lanham Act......................................................................... 2, 7, 8, 9, 12, 13

Lanham Act § 43(a) ........................................................................2

## RULES

Federal Rules of Civil Procedure Rule 50(b) ................................................10

## OTHER AUTHORITIES

Restatement (Third) of Unfair Competition
    § 36 cmt. h ...........................................................................7
    § 36 cmt. i ........................................................................4, 6, 7

Defendant Imprimis Pharmaceuticals, Inc. ("Imprimis") respectfully submits this Reply Brief in support of its Renewed Motion for Judgment as a Matter of Law (Dkt. 251).

**1.   A Legally Cognizable Damages Theory Does Not Require Expert Testimony, but Allergan's Damages Theory is Not Legally Cognizable, With or Without Expert Testimony.**

At several places in its Opposition (Dkt. 257), Allergan mischaracterizes or misinterprets Imprimis's references, in the Motion, to the exclusion of Allergan's expert, Mr. Stec.  Imprimis did not reference the exclusion of Mr. Stec to try to show that expert testimony is always necessary to prove damages.  Rather, Imprimis referenced the exclusion of Mr. Stec to show that Allergan's damages presentation at trial suffered from the same legal flaw that had led to the demise of Mr. Stec's opinion – *i.e.*, Allergan, like Mr. Stec, "fail[ed] to attribute damages to any or even all of Imprimis's false ads, or to account for a handful of potential alternative factors. . . ."  Mot. at 1:12-14, *quoting* Dkt. 222 at 2.

A legally flawed damage theory does not magically transform into a legally cognizable damage theory by eliminating the expert who is spouting the theory or by trying to prove the same theory through alternative evidence.  Rather, the only way Allergan could have proven damages without an expert was to fix the flaws in the theory posited by its expert.  Allergan failed to do so.

In sum, Allergan theoretically could have proven damages without the aid of an expert; Allergan, in the reality of this case, failed to do so.

**2.   *ThermoLife* Is Not "Squarely On Point" and Does Not Allow Damages to be Awarded Based on Presumptions.**

Allergan says on page 13 of the Opposition that *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 648 F. App'x 609 (9th Cir. 2016), is "squarely on point" and enables a court in a false advertising case to award damages simply because the parties are competitors and the defendant made a literally false statement.  Allergan is

1  wrong for two reasons.

2       <u>First</u>, the Ninth Circuit panel in *ThermoLife* expressly declined to weigh in on

3  the question before this Court.  The *ThermoLife* panel stated:  "[W]e decline to decide

4  whether ThermoLife has presented sufficient evidence to establish entitlement to

5  damages." *Id.* at 616.  Here, the question is whether Allergan presented sufficient

6  evidence from which a jury could have awarded actual damages under the Lanham

7  Act.  *ThermoLife* did not reach the question before this Court.  Allergan's assertion

8  that *ThermoLife* is "squarely on point" thus falls flat.

9       <u>Second</u>, published (and thus binding) Ninth Circuit authority holds that actual

10  damages cannot be awarded simply because the parties are competitors and the

11  defendant made a false statement *about itself or its own products*.  For damages to be

12  permissible, particularly in cases like this of non-comparative advertising, there must

13  instead be evidence of the fact and amount of damages resulting from the false

14  advertising.  *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir.

15  1989) ("In a suit for damages under section 43(a), however, actual evidence of some

16  injury resulting from the deception is an essential element of the plaintiff's case"); *see*

17  *also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011)

18  (distinguishing cases involving false comparative advertising because there "it's

19  reasonable to presume that every dollar defendant makes has come directly out of

20  plaintiff's pocket"); *Societe Civile Succession Richard Guiono v. Bedeser Inc.*, 2007

21  WL 3238703, at *6 (D. Ariz. Oct. 31, 2007) (Murgia, J.) ("While a finding of literal

22  falsity does support a presumption of actual confusion among consumers, this

23  presumption does not somehow demonstrate that Defendant Renoir was damaged by

24  such confusion in this case").

25       Presumptions – as opposed to evidence – are inadequate to sustain the jury's

26  damage award.

27

28

**3.** **The Court's Summary Judgment Ruling Did Not Establish Allergan's Entitlement to Some Amount of Damages.**

Allergan repeatedly references this Court's summary judgment ruling in support of its argument that the "fact of harm" was proven and all that remained for the jury to decide was the "amount" of that harm.  Allergan is wrong for several reasons.

<u>First</u>, the Court instructed that the trial focused "on the following issues: Whether any of the aforementioned statements made by Imprimis caused harm to Allergan, and, if so, the amount of damages that should be awarded to compensate Allergan for the harm."  (Dkt. 223 at 4.)  Allergan's position eliminates the first clause and jumps right to the second.

<u>Second</u>, as explained in Section 2, supra, the Ninth Circuit (and other courts) hold that a finding of liability alone is not enough to prove an entitlement to monetary damages, particularly in cases, like this, of non-comparative advertising.  In, for example, *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exchange, Inc.*, 732 Fed Appx. 532 (9th Cir. Apr. 30, 2018), as well as the *Harper House* and *TrafficSchool.com* cases cited in Section 2 supra, the Ninth Circuit denied monetary recovery to the plaintiff even though liability (and thus falsity, materiality, and deception) had been proven.  Indeed, even in Allergan's own preferred authority, *ThermoLife*, the Ninth Circuit panel held that, even though the plaintiff had evidence to show falsity, materiality, deception, and harm, the question of whether the plaintiff could establish entitlement to damages remained undecided.

In short, as the cases cited above and in footnote 3 of the Motion show, there would be nothing inconsistent or erroneous about finding that Allergan had proven all elements of false advertising, yet Allergan had wholly failed to establish an entitlement to damages as a matter of law.

-3-

DEFENDANT IMPRIMIS PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**4.**     <u>**Allergan's Evidence of Sales Trends Is Inadequate Proof Connecting**</u>
<u>**Losses to False Advertisements or Quantifying Allergan's Alleged Losses.**</u>

On page 14 of the Opposition, Allergan asserts that the jury's damages award could be supported by evidence that "Allergan's sales of its dry eye, glaucoma, and cataract drugs declined during the 2016-2018 time period during which Imprimis stipulated it engaged in false advertising." Allergan then quotes from Comment i of Section 36 of the Restatement (Third) of Unfair Competition for the proposition that "[p]roof of a general decline in sales or a disruption of anticipated business growth following the defendant's misconduct can be sufficient . . . to justify an inference of causation." Opp. at 14:13-16. Allergan's argument is based on incomplete evidence, a misleading quotation of applicable principles, and faulty logic.

**A.**     <u>**The sales trend argument fails as a matter of evidence and logic.**</u>

Allergan's sales trend argument fails as a matter of evidence and logic for at least two reasons.

<u>First</u>, Allergan cites the wrong "period of wrongdoing." The time period during which Imprimis engaged in false advertising did not start in 2016; it began in 2014. And Imprimis's false advertisements did not continue through 2018; they stopped in January 2018.[1] The evidence does not show a drop in Allergan's sales between 2014 and January 2018. Rather, the evidence shows Allergan's sales going up and going down during the actual period of wrongdoing. (Akro. Decl., Exs. 750, 694.)

<u>Second</u>, a valid trend analysis cannot be limited to a comparison of the parties' respective sales solely during the period of wrongdoing. Rather, "[i]n order to determine lost profits based on declining revenue, a pre-infringement 'base line' must be established to predict what revenue plaintiff would have generated absent the

---

[1]     The parties stipulated that the period of infringement ended in January 2018. There was no credible evidence that Allergan's sales would have been negatively affected by the advertisements for the rest of 2018. Therefore, the period of wrongdoing that Allergan espouses is simultaneously too late in its start and end.

infringement." *Victoria Cruises, Inc. v. Changjiang Overseas Travel Co.*, 630 F. Supp. 2d 255, 262 (S.D.N.Y. 2008); *see also Lindy Pen Co. v. Bic Pen Corp.*, 1989 WL 296762 (C.D. Cal. 1989) (denying actual damages because trend included inappropriate pre-infringement period).

The pre-wrongdoing baseline requirement makes sense. Consider, as a hypothetical, that a plaintiff's sales during the period of wrongdoing (2014-2018) were as follows:



Allergan would contend that the sales trend depicted above is clear and adequate proof that the defendant's wrongdoing between 2014 and 2018 caused harm to the plaintiff. After all, the plaintiff's sales steadily and materially declined during the period of the defendant's misdeeds.

But then, hypothetically, add the plaintiff's pre-wrongdoing sales trend (2010-2013) into the mix:

DEFENDANT IMPRIMIS PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1
2
3
4
5
6
7
8
9
10
11



12 Including the pre-wrongdoing period clarifies that the drop in the plaintiff's sales

13 from 2014 through 2018 is entirely consistent with a longer-term trend.  No

14 reasonable person, considering the sales during both the period prior to wrongdoing

15 and the period of wrongdoing, would conclude that the drop in the plaintiff's sales

16 during the period of wrongdoing evidences a connection between the plaintiff's loss

17 in sales and the defendant's wrongdoing.

18      Allergan's reference to a drop in sales *during a portion of the period of*

19 *wrongdoing alone* is incomplete as a matter of evidence and fatally flawed as a matter

20 of logic.

21     **B.**    <u>**The sales trend argument is based on a distorted quotation of**</u>

22         <u>**relevant legal principles.**</u>

23      Allergan ostensibly quotes from the Restatement of Unfair Competition for the

24 proposition that "[p]roof of a general decline in sales or a disruption of antici-pated

25 business growth following the defendant's misconduct can be sufficient . . . to justify

26 an inference of causation."  Opp. at 14:13-16, *quoting* Restatement (Third) of Unfair

27 Competition, § 36 cmt. i.  Allergan omitted, however, the critical caveat that came

28 next:  "However, many potential intervening factors can affect the plaintiff's sales,

1  and the presence of such factors bears on the sufficiency of the plaintiff's proof." *Id.*

2  at cmt. h.  And the Restatement goes on to clarify:  "Proof of a decline in sales

3  *combined with evidence tending to discount the importance of other market factors,*

4  *such as evidence of positive business conditions and the success of similar businesses*

5  *not subject to the defendant's tortious conduct*, can be sufficient to establish a causal

6  connection between the plaintiff's decline in sales and the misconduct of the

7  defendant." *Id.* (emphasis added).

8       Allergan failed to present any evidence discounting the myriad alternative

9  causes of its purported lost sales.  Allergan admitted that there were a wide variety of

10  factors that could have caused any purported drop in its sales.  (Motion at 5:4-6:17.)

11  Indeed, Allergan even conceded that there was another factor that caused the drop in

12  its dry eye sales – *i.e.*, the entry of competitive product (Xiidra by Shire) into the

13  market.  (*Id.* at 6:10-17.)  Yet, no witness testified whether or why a drop in sales was

14  caused by false advertising versus entry of a new competitor versus price versus

15  avoiding insurance requirements versus other factors.

16       Nor could the jury appropriately decide, without any evidentiary basis, to

17  wholly disregard other factors and conclude that the false advertising was a

18  substantial factor in causing one or more lost sales.  As Judge Fischer held when

19  adjudicating as a matter of law, post-trial, a lack of damages under the Lanham Act:

20  "[I]t is part of the plaintiff's prima facie burden to discount at least some of the

21  possible other factors that might contribute to the divergent fortunes." *Stop Staring!*

22  *Designs v. Tatyana*, LLC 2012 WL 12883613, at **1-2 (C.D. Cal. Sept. 13, 2012),

23  *aff'd* 625 Fed.Appx. 328, 330 (9th Cir. Aug. 31, 2015).  Therefore, "a plaintiff should

24  provide some evidence that discounts alternative explanation for the observed

25  divergence in fortunes as part of its case." *Id.* at *2.  The plaintiff here (Allergan)

26  provided no such evidence; Allergan's damage claim should meet the same fate as the

27  plaintiff's damages claim in *Stop Staring!*.

28       Finally, even if the sales trends could support a finding of lost sales caused by

1   false advertising (which is not possible for the reasons set forth above), Allergan

2   failed to present any evidence of how a juror could reasonably quantify that harm.

3   Therefore, "the record provides 'no way to determine with any degree of certainty

4   what award would be compensatory,' as required by [Ninth Circuit] precedent." *Out*

5   *of the Box Enterprises, LLC v. El Paseo Jewelry Exchange, Inc.*, 732 Fed.Appx. 532,

6   534 (9th Cir. April 30, 2018).

7        For all of the reasons above, Allergan failed to present evidence of sales trends

8   that could support an award of actual damages under the Lanham Act.

9   **5.**   **<u>Allergan's Evidence that Customers Purportedly Purchased from</u>**

10       **<u>Imprimis After Being Exposed to the False Advertisements Is Inadequate</u>**

11       **<u>as a Matter of Law to Sustain the Damage Award</u>**.

12       Allergan notes that "numerous customers ordered Imprimis drugs after

13  receiving or being exposed to Defendant's false statements." Opp. at 6:1-8:1, 15:17-

14  19. As a threshold matter, there is no evidence that the persons who received or were

15  exposed to the statements were the same persons who decided to purchase from

16  Imprimis. Simply because, as a hypothetical example, a "John" from a "St. Luke's

17  Hospital" asked for further information about Imprimis products does not mean that

18  John had the authority to place, or actually placed, the purchase order from St. Luke's

19  referenced in Imprimis's sales records.[2]

20       More fundamentally, however, a correlation between the timing of a

21  defendant's false statement and a purchase by a defendant's customer does not

22  establish causation. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996), is

23  instructive. There, like here, the jury found that the defendant's (Coca-Cola's) false

24

25  _____

   [2]    Allergan's reference to Dr. Rauser's testimony is tired and unpersuasive. Dr.

26  Rauser did not know, prior to deposition, whether Imprimis's formulations were FDA approved. *But Dr. Rauser did not care whether Imprimis's formulations were FDA*

27  *approved*. He would have utilized Imprimis's formulations regardless. His testimony in no way could lead a reasonable juror to conclude either that he was "deceived" or

28  that Allergan lost sales due to the false advertising.

DEFENDANT IMPRIMIS PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW

statements caused the plaintiff (Seven-Up) to suffer actual damages.  There, like here, the plaintiff "did not present any direct evidence that [a customer] was influenced by any of the material in the Coca-Cola presentation in deciding to switch to distributing Sprite." *Id.* at 1388.  There, like here, the false statements were one of myriad statements presented in the relevant communications. *Id.* at 1389.  There, like here, there was evidence that customers did *not* rely on the statements in question. *Id.* There, like here, the plaintiff asserted that, despite the plaintiff's evidentiary gaps and contrary evidence presented by the defendant, the jury could find the false advertising caused a lost sale because a customer placed an order with the defendant shortly after witnessing the false statement. *Id.* at 1388 ("Seven-Up argues that the inference to be drawn from the fact that the board witnessed the presentation and then, immediately or within a short period of time, decided to switch soft drinks provides substantial evidence, on its own, to support the jury's verdict on the issue of causation").  There, as this Court should hold here, the trial judge (and later the Court of Appeals) rejected the plaintiff's argument, holding that "an inference of causation based merely on the chronology of events is not a reasonable one for the jury to make." *Id.* at 1389; *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc*., 627 F. Supp. 2d 384, 487-88 (D.N.J. 2009) (relying upon *Seven-Up* and holding that the temporal proximity of the defendant's presentation of false statements to customers and the customers' purchases from defendant was inadequate to support a damage award under the Lanham Act).  Based on the reasoning in the cases cited above, the Court should reject Allergan's attempt to predicate a damage award on the temporal proximity of false advertisements and customer orders.

Indeed, Allergan's evidence regarding the timing of individual customer purchases from Imprimis is weaker than the evidence the Ninth Circuit found inadequate when reversing Judge Phillips's denial of judgment as a matter of law in *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exchange, Inc.*, 732 Fed.Appx. 532 (9th Cir. Apr. 30, 2018).  To remind the Court, in *Out of the Box*, the defendants

1  falsely advertised they would buy gold at 92 percent of market value, and the

2  competitor-plaintiff asserted it lost profits because customers sold their gold to

3  defendants instead.  There, plaintiff Out of the Box "presented evidence that OOTB's

4  representatives 'had conversations in which customers referred to El Paseo's

5  advertisement, asked whether [OOTB] could match El Paseo's price, and then stated

6  they were going to sell their jewelry to El Paseo when [OOTB] could not match El

7  Paseo's price.'"  Appellee's Answer Brief on Appeal in *Out of the Box Enterprises,*

8  *LLC v. El Paseo Jewelry Exchange, Inc.*, Ninth Circuit Case No. 13-55239, Dkt. No.

9  82 at 4.  Here, there is nothing that rises to the level of the evidence deemed

10  inadequate in *Out of the Box Enterprises*.[3]  There was no testimony, even from

11  Allergan itself, that customers referenced the Imprimis ads when declining to

12  purchase from Allergan.  Indeed, there was no testimony, even from Allergan itself,

13  that any customer switched from Allergan to Imprimis.

14       Allergan's evidence that a few customers purchased from Imprimis after agents

15  of those customers were exposed to the false statements is inadequate as a matter of

16  law to prove entitlement to actual damages.[4]

17

18

19

[3]      Imprimis does not agree with Allergan's characterization of *Out of the Box Enterprises* as being about expert exclusion "at its core."  *Out of the Box Enterprises* consists of an appeal from the denial of a Rule 50(b) motion for judgment as a matter of law, in which the Ninth Circuit concluded that "[v]iewing the evidence in the light most favorable to Out of the Box, the only reasonable conclusion in this case is that Out of the Box failed to meet its burden of adequately proving:  (1) that El Paseo's advertisements caused Out of the Box to lose profits; and (2) the amount of any lost profits."  In other words, the Ninth Circuit in *Out of the Box* addressed the same question that the Ninth Circuit herein will consider when evaluating Imprimis's cross-appeal if the Motion is denied:  Did the plaintiff present evidence from which a jury could award actual damages under the Lanham Act's false advertising provisions?

[4]      Allergan's assertion that "Imprimis's executives bragged that they were taking Allergan's marketing share" is irrelevant.  Even construing the evidence in Allergan's favor, as the Court must do at this stage, the fact that Imprimis's executives believed that Imprimis had taken sales from Allergan does not lead to the conclusion *that statements in Imprimis emails or marketing materials* were a substantial cause of Imprimis purportedly taking sales from Allergan.

1297486.1

-10-

DEFENDANT IMPRIMIS PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**6.**     <u>Allergan Failed to Show How the Evidence Provides a Reasonable Basis for Computing the Amount of Lost Sales Due to False Advertising</u>.

As explained in the Motion, a fundamental flaw in Allergan's damages case was the absence of evidence providing the jury a reasonable basis for computing the lost sales due to false advertising versus other legitimate factors. *See, e.g.*, Mot. at 1:22-25 ("[A]ccording to Allergan, the jury could pick any number – whether 1% or 50% or 87% or 90% or 100% -- of sales attributable to the false advertising. Allergan's solution addressed the symptoms of the unreliability of Mr. Stec's damages model, but the disease itself remained untreated"); 11:16-18 ("[T]he formula provided no guidance as to how to calculate (or even reasonably estimate) the figure that goes to the heart of damages in this case – *i.e., the number of sales caused by the false advertising as opposed to other factors*").

Allergan could not, in its Opposition, identify a reasonable basis for quantifying the percentage of alleged lost sales attributable to the false advertisements. Allergan tried to justify the quantification of actual damages as follows:

> "[T]he jury could have reasonably determined that the false advertising caused Allergan's lost sales in the amount of $48,500 and that 3.6% of Imprimis's sales were caused by false advertising up through the period of January 31, 2018. Allergan provided evidence throughout the trial of the ubiquitousness of Imprimis's false advertising, and showed the jury several examples of Imprimis emails where Imprimis employees lied to prospective customers, which were followed closely in time by those customers prescribing or purchasing Imprimis's drugs. That evidence, and the inferences a reasonable jury could draw from it, supports the verdict.

Opp. at 19:6-14.

DEFENDANT IMPRIMIS PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1  The Court should not adopt Allergan's position because the position could

2  apply whether the jury had found that Imprimis's false advertising was a substantial

3  factor in 3.6% or 10.5% or 57.3% or 100% of Imprimis's sales that would have gone

4  to Allergan instead.  Essentially, Allergan is arguing that evidence is adequate to

5  support a Lanham Act damage award if:  (a) the plaintiff and defendant are

6  competitors; and (b) the plaintiff presents evidence from which a reasonable juror

7  could find that a lot of customers saw the defendant's false ads.  No binding appellate

8  authority stands for the proposition Allergan is espousing, and the Ninth Circuit cases

9  cited above and in the Motion reject that proposition.

10  Allergan complains, however, that "[t]here is no practical way to objectively

11  prove which or Imprimis's hundreds of thousands of individual sales were caused by

12  false advertising, and which were not . . . ."  Opp. at 20:2-4.  There are, however,

13  several practical ways to sustain a plaintiff's burden of proving an entitlement to

14  actual damages caused by false advertising in violation of the Lanham Act.  Those

15  practical ways are:  (a) direct testimony from consumers who were deceived into

16  switching from the plaintiff's products to the defendant's products; (b) a survey

17  showing what percentage of relevant consumers were deceived into switching from

18  the plaintiff's products to the defendant's products; or (c) a reliable sales trend

19  analysis.

20  Allergan scoffs at Imprimis's explanation of how "things are usually done."

21  (Opp. at 1:15-17.)  But if Allergan had tried how "things are usually done" – *i.e.*, the

22  tried and true methods of proving Lanham Act damages – then Allergan could have

23  avoided the predicament it currently faces:  an evidentiary record that cannot

24  demonstrate actual damages caused by false advertising.  Instead, Allergan

25  recognized that how "things are usually done" would yield unfavorable results and

26  thus doubled down on the damage theory that this Court had rejected when excluding

27  Mr. Stec, hoping the Court would disregard governing law and defer to whatever the

28

DEFENDANT IMPRIMIS PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

1   jury had to say.[5]

2       The same flaws that doomed Mr. Stec's damage theory are present in the

3   damage theory proffered by Allergan at trial.  The Court should consistently apply the

4   same reasoning and scrutiny to Allergan's theory of damages presented at trial as it

5   did to Allergan's theory of damages espoused by Mr. Stec.  If the Court does so, there

6   is only one logical result:  Judgment as a matter of law on the issue of actual damages.

7       Respectfully Submitted:

8   Dated:  July 15, 2019                    PAYNE & FEARS LLP
9                                            Attorneys at Law
10                                               Daniel L. Rasmussen

11                                           BROWNE GEORGE ROSS LLP
                                                Keith J. Wesley
12

13                                           By:        /s/  Keith J. Wesley
                                                         Keith J. Wesley
14                                           Attorneys for Defendant
15                                           Imprimis Pharmaceuticals, Inc.

16

17

18

19

20  _____

[5]      Allergan's cites to *DSPT Int'l v. Nahum*, 624 F.3d 1213 (9th Cir. 2010), for the
21  proposition that, in a case of intentional wrongdoing, the evidence of the amount of
    damages can be less reliable than in a case of unintentional wrongdoing.  Opp. at
22  16:22-17:7.  That legal proposition does Allergan no good here because, as this Court
    noted in its July 11, 2019 Order, Imprimis's false advertising was not intentional.
23  Dkt. 260 at 4-5 ("The evidence at trial made clear that the false statements were
    vetted by Imprimis's committee that included outside counsel, see Dkt. 241-6
24  (Transcript, May 14, 2019, Vol. II at at 76:1-17), and that within days of being put on
    notice via the Complaint, Imprimis took down the statement identified.  Dkt. 241-6
25  (Transcript, May 14, 2019, Vol. I at 7:19-9:1).  And Imprimis removed the remaining
    statements after the FDA met with Allergan and shortly thereafter issued a warning
26  letter regarding the false statements (Id. at 8:1-23; Dkt. 241-7 (Transcript, May 14,
    2019, Vol. III) at 71:24-72:9). . . [T]he evidence presented at the Lanham Act trial
27  consistently demonstrated that where FDA has acted clearly—including by issuing a
    warning letter with regards to misleading statements—Imprimis has responded and
28  complied by removing the advertisements.").

1297486.1
                                              -13-                Case No. 8:17-cv-01551-DOC-JDE